## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DAVID GUMBETTER,**

    **Plaintiff,**     **CIVIL ACTION NO. 04-CV-40328-FL**

  **vs.**

            **DISTRICT JUDGE PAUL V. GADOLA**

**UNUM LIFE INSURANCE**    **MAGISTRATE JUDGE MONA K. MAJZOUB**
**COMPANY OF AMERICA,**

    **Defendant.**
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND TO STAY RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS AND REQUESTS FOR ADMISSIONS

Plaintiff filed the instant complaint on November 12, 2004 pursuant to the Employee Retirement Insurance Security Act (ERISA) claiming that Defendant UNUM Life Insurance Company of America ("UNUM") improperly terminated his disability retirement benefits. Specifically, Plaintiff alleges breach of contract and fiduciary duties as well as failure to afford procedural due process. On February 16, 2005 Plaintiff sent Defendant twenty-two requests for admissions, eight requests for production of documents, and sixteen interrogatories. On March 14, 2005, Defendant filed a Motion for Protective Order and Motion to Stay Responses to Plaintiff's Discovery Requests and Requests for Admissions to which Plaintiff filed a timely Response. Defendant filed a Reply in support of its motion for protective order. The matter has been referred to the undersigned for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). On April 11, 2005 the parties, through counsel, argued the matter at which time the undersigned took the matter under advisement and granted Defendant's Motion to Stay Responses to Plaintiff's Discovery Requests and Requests for Admissions until the Court issued its ruling on Defendant's Motion for Protective Order.

-1-

## I. Facts

In November 1996, Plaintiff, employed by Michigan Gage Engineering, Inc., was involved in an automobile accident in which he sustained injuries to his neck and back. In 1997 Plaintiff applied for and began receiving long term disability benefits from Defendant under a policy purchased by his employer. Plaintiff continued receiving benefits until November 2001 at which time Defendant terminated Plaintiff's benefits. In a letter dated November 16, 2001, Defendant indicated, in part, that:

> Independent observations were conducted on your activities surrounding the dates of September 11, 2001 through September 13, 2001. These observations determined that your actual activities exceed your stated abilities and the functional abilities exhibited during your Functional Capacities Evaluation (FCE).
>
> []
>
> Since the FCE illustrates your current physical capacities are within the boundaries of your sedentary occupation, and the surveillance demonstrates that your current activities are also within the limits of a sedentary occupation, we are unable to extend any further benefits and your claim is not being closed.
>
> If you have new, additional information to support your request for disability benefits, please send it to my attention at the address noted on this letterhead.
>
> However, if you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 90 days of the date of this letter. Your written appeal should include your comments and views of the issues, as well as any new documentation you may wish us to consider. You may also request copies of documents contained in your claim file, which were pertinent to the denial decision. You should submit your written appeal to the following address: [address omitted]
>
> If we do not receive your written appeal within 90 days of the date of this letter, our claim determination will be final.

(Defendant's Exhibit 2).

In a letter dated February 6, 2002 Plaintiff appealed Defendant's decision to terminate his

benefits and submitted additional evidence to support his claim for disability (Defendant's Exhibit 3).
Plaintiff also requested that Defendant send to him copies of (1) the letter dated November 16, 2001
explaining the termination of his benefits, (2) the surveillance video, and (3) the Functional Capacity
Evaluation that Defendant relied on to terminate his benefits (Defendant's Exhibit 3). Defendant
acknowledged receipt of Plaintiff's letter dated February 6, 2002 along with the additional evidence,
indicated that his appeal would be referred to the medical team for evaluation, and indicated that a copy
of the FCE was enclosed (Defendant's Exhibit 4). Defendant also indicated that "we must make a copy
of the [surveillance] footage prior to mailing it" (Defendant's Exhibit 4).

On March 25, 2002, Plaintiff sent a follow up letter to Defendant in which he indicated:

> Today is 3/25/02 as dated above and I have received nothing since your
> letter dated 2/7/02. I again would like to request a copy of your
> surveillance video, pages 7,12, 22 & 23 of my FCE report dated
> 10/27/01 and any appeals process literature so that I can know what my
> rights are in this matter.

(Defendant's Exhibit 5). On April 19, 2002, Defendant provided Plaintiff with the following response:

> We have reviewed the additional information you recently sent us. We
> regret this information was not sufficient to reverse our previous
> decision.
>
> []
>
> Our physician concluded his review by stating, 'There are fragments of
> previous visits which do not lend any objective information to the file.
> There is a report of a cervical MRI which is normal. There is no
> evidence that claimant would be unable to work in a sedentary or light
> occupation. There is the surveillance which shows claimant performing
> many tasks which he has repeatedly stated that he is unable to do.
> There is no evidence to support a change in the previous reviews.'
>
> Per your request, enclosed with this letter, you will find a copy of your
> surveillance tape.
>
> This information and your file have been forwarded to the Quality
> Performance Support Unit in Portland, Maine. They will provide a final
> determination of your claim. The Quality Performance Support Unit

-3-

> will contact you when your file is received and let you know who will be
> handling your file.

(Defendant's Exhibit 6). On May 16, 2002, Defendant sent Plaintiff a six-page letter indicating that its appellate review was complete and "[b]ased upon our review, it has been determined that the decision to terminate benefits was appropriate." (Defendant's Exhibit 9). The letter outlined all of the medical evidence that Defendant relied upon in reaching its conclusion.

Plaintiff filed the instant complaint on November 12, 2004 pursuant to 28 U.S.C. §1132 alleging that "Defendant's decision to deny this claim is without support. The only reasonable explanation for Defendant's denial of this claim is bias, self-dealing and/or a complete absence of due process." (Plaintiff's Complaint, pg. 5, ¶ 29). On February 16, 2005, Plaintiff served Defendant with numerous discovery requests to which Defendant filed the instant Motion for Protective Order and Motion to Stay Responses to Plaintiff's Discovery Requests and Requests For Admissions. In its Motion for Protective Order, Defendant asserts that Plaintiff is not entitled to any discovery in an ERISA action challenging the denial of benefits.

## II.  Law and Discussion

Fed. R. Civ. P. 26 allows courts to issue a protective order if justice requires and to protect individuals from annoyance, embarrassment, oppression, or undue burden or expense. The burden of establishing good cause for a protective order rests with the movant. *See General Dynamics Corp. V. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To show good cause, a movant for a protect order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements. *Avirgan v. Hull*, 188 F.R.D. 252, 254 (D. D.C. 1987). Here, Defendant argues that this Court should issue a protective order barring Plaintiff's discovery requests.

In an ERISA claim contesting the denial of benefits, the district court's review is generally

-4-

limited to the record relied upon by the plan administrator.  *Kilian v. Healthsource Provident Administrators,* 152 F.3d 514, 515 (6th Cir. 1998)(citing *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir. 1990).  In limited circumstances, however, a claimant challenging the denial of benefits in an ERISA action may be permitted discovery where he raises a procedural due process challenge to the administrator's decision.  *Wilkins v. Baptist Healthcare Sys. Inc.,* 150 F.3d 609, 618 (6th Cir. 1998)(citing *Vanderklok v. Provident Life and Accident Ins. Co., Inc.,* 956 F.2d 610, 617 (6th Cir. 1992)).  Before the district court allows discovery, "a claimant must identify the specific procedural challenge(s) about which he complains and [his] discovery must then be limited to those procedural challenges."  *Bennett v. UNUM Life Ins. Co.,* 321 F. Supp. 2d 925 (E.D. Tenn. 2004)(relying on *Wilkins,* 150 F.3d at 619).

In this case, Plaintiff contends that he is entitled to discovery based on the administrator's denial of his procedural due process rights in pursuing his claim for benefits.  Essentially, Plaintiff claims he was denied a full and fair review of his claim because Defendant "never obtained a copy of his MRI or requested an Independent (medical) Exam."  (Plaintiff's Response to Defendant's Motion for Protective Order, pg. 16).  This argument is wholly without merit.  The burden of proving entitlement to disability benefits under an ERISA plan falls squarely on the claimant.  A plan administrator has no duty to seek additional medical evidence to support an individual's claim for disability.  *See Fuja v. Benefit Trust Life Ins. Co.,* 18 F.3d 1405, 1408 (7th Cir. 1994)(holding that ERISA plaintiff has burden of proving coverage).  Therefore, the Court rejects Plaintiff's contention that Defendant's failure to obtain MRI results or schedule Plaintiff for an independent medical examination amounts to a procedural due process violation under ERISA.

Plaintiff also claims that Defendant violated his procedural due process rights under 29 C.F.R. § 2560.503-1(g) by not including in his termination notice "a statement of the claimant's rights to bring a civil action under section 502(a) of the Act."  (Plaintiff's Response to Defendant's Motion for

-5-

Protective Order, pg. 17). Title 29 C.F.R. § 2560.503-1(g)(2)(iv), requiring a statement of a claimant's rights to bring a civil action under section 502(a) of the Act, applies only to "claims filed . . . on or after the first day of the first plan year beginning on or after July 1, 2002, but in no event later than January 1, 2003." 29 C.F.R. § 2560.503-1(o). Plaintiff's application for benefits was filed on May 15, 1997 (Plaintiff's Response to Defendant's Motion for Protective Order, pg. 1). The regulations in effect at the time of Plaintiff's application contained no such provision as currently found in 29 C.F.R. § 2560.503-1(o). Therefore, the Court rejects Plaintiff's argument that his procedural due process rights were violated by Defendant's failure to advise him of his right to bring a civil action under section 502(a) of the ERISA Act.

Plaintiff further asserts that Defendant ignored his request for a copy of the surveillance video and failed to provide pages 7, 12, 22, & 23 of Plaintiff's FCE. *Id.* Plaintiff asserts that Defendant's failure to furnish certain pages of the FCE and video violates 29 U.S.C. § 1133 and the companion regulations promulgated thereunder. The Court disagrees.

Title 29 U.S.C. § 1133 provides that:

> In accordance with regulations of the Secretary, every employee benefit plan shall –
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1)-(2). The regulations promulgated under § 1133 provide:

> (f) Content of notice. A plan administrator . . . shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

(g)  Review procedure.  (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:

(I)  Request a review upon written application to the plan;

(ii)  Review pertinent documents; and

(iii)  Submit issues and comments in writing.

29 C.F.R. § 2560.503-1(f)-(g).  Having reviewed the correspondences contained in the record, the Court

is convinced that Defendant complied with the mandates of both 29 U.S.C. § 1133 and 29 C.F.R. §

2560.503-1(f).

In its letter dated November 16, 2001 Defendant outlined its reasons to support its decision to

terminate Plaintiff's disability benefits.  Defendant quoted the relevant portion of Plaintiff's LTD policy

and described with specificity why Plaintiff no longer meet the requirements for disability benefits.

Defendant cited independent observations and how those observations were allegedly contrary to

Plaintiff's previously determined functional capacity.  The letter indicated that Plaintiff could appeal the

adverse decision "within 90 days . . .[,] request copies of documents contained in your claim file, . . .

[and] submit your written appeal to the following address: [omitted]."  (Defendant's Exhibit 2).  This

letter conforms with the requirements of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f).

Within 90 days, Plaintiff appealed Defendant's decision to terminate his disability benefits and submitted additional medical documents for consideration on appeal. Plaintiff also requested (1) a copy of Defendant's November 16, 2001 letter terminating his benefits, (2) a copy the FCE relied upon by Defendant in reaching its conclusion, and (4) a copy of the surveillance video (Defendant's Exhibit 3, Plaintiff's Letter of Appeal dated February 7, 2002). Plaintiff's letter of appeal clearly demonstrates his understanding of Defendant's instructions regarding the filing of an appeal. In a letter dated February 7, 2002 Defendant acknowledged Plaintiff's letter of appeal and receipt of Plaintiff's additional medical documentation (Defendant's Exhibit 4). The letter also indicates that a copy of Plaintiff's FCE report and original denial letter were enclosed. *Id.* Up until this point, Defendant has complied with the relevant statute and regulations as to Plaintiff's procedural due process rights.

On March 25, 2002, Plaintiff sent Defendant a letter in which he stated, "I have received nothing since your letter dated 2/7/02. I again would like to request a copy of your surveillance video, pages 7, 12, 22, & 23 of my FCE report dated 10/27/01 and any appeals process literature" (Defendant's Exhibit 5). Upon reconsideration, Plaintiff's claim was denied by Defendant on April 19, 2002 (Defendant's Exhibit 6). The letter denying Plaintiff's claim upon reconsideration also indicated:

> Per your request, enclosed with this letter, you will find a copy of your surveillance tape.
>
> This information and your file have been forwarded to the Quality Performance Support Unit in Portland, Maine. They will provide a final determination of your claim. The Quality Performance Support Unit will contact you when your file is received and let you know who will be handling your file.

(Defendant's Exhibit 6). Thus, the record indicates that Defendant sent to Plaintiff a copy of the surveillance video prior to Plaintiff's final appellate review of his claim. The record does not indicate, however, whether Defendant sent or Plaintiff received pages 7, 12, 22, & 23 of the FCE. If, true,

Defendant's failure to provide pages 7, 12, 22 & 23 of the FCE violates 29 C.F.R. § 2560.503-1(g)(ii) as those documents were both relevant and pertinent to Plaintiff's ability to prepare an appeal.

Assuming, *arguendo*, that Defendant violated 29 C.F.R. § 2560.503-1(g)(ii) by failing to provide Plaintiff with pages 7, 12, 22, & 23 of the FCE, the Court must determine whether Plaintiff should be allowed discovery and to what extent. Generally, "a claimant must identify the specific procedural challenges(s) about which he complains and [his] discovery must then be limited to those procedural challenges." *Bennett v. UNUM Life Ins. Co.*, 321 F. Supp. 2d 925 (E.D. Tenn. 2004)(relying on *Wilkins*, 150 F.3d at 619). Significantly in this case, however, Plaintiff does not seek the documents he claims he did not receive. Nowhere in Plaintiff's discovery requests does he seek pages 7, 12, 22, & 23 of his FCE. Instead, Plaintiff seeks information relating to Defendant's compensation of its employees and doctors. *See* Defendant's Exhibit 1, Plaintiff's First Interrogatories to Defendant, pg. 3-5). Plaintiff also seeks to discover, *inter alia*, "the source of [Defendant's] funding for any benefits that were paid", "the financial relationship between [Defendant] and the employer/plan administrator", and "the amount in dollars of the reserves assigned to this claim" (Plaintiff's Interrogatories Nos. 5, 6, & 7). Plaintiff also seeks to discover "all internal guidelines, policies, procedures, claims handling manuals . . . concerning the interpretation and/or administration of the policy issued in this case" (Plaintiff's Int. No. 8). None of Plaintiff's discovery requests address the specific procedural claim that Defendant may have violated 29 C.F.R. § 2560.503-1(g)(ii). Given that Plaintiff's only plausible argument arising from Defendant's possible violation of 29 C.F.R. § 2560.503-1(g)(ii) is based on his inability to effectively prepare an appeal, the Court concludes that Plaintiff's discovery requests are wholly irrelevant.[1]

---

[1] Seemingly, Plaintiff's remedy here would be to seek a remand at which time he could properly prepare an appeal. However, given that Defendant has already offered to reconsider Plaintiff's entire claim, Plaintiff's request for a remand would appear unnecessary (See Defendant's Exhibit 7, Letter dated January 14, 2005 stating, "[i]f you believe that you may be eligible for benefits for which you have not been paid, you are entitled to request that the Companies review their previous decision to deny your disability income claim . . .").

Plaintiff also seeks discovery based on Defendant's alleged bias and conflict of interest.   In addition to Defendant's compensation of its doctors and claims handlers, Plaintiff's discovery requests seek information explaining Defendant's use of "walk-ins",  "360 Review", "round table", and the "Hungry Vulture Award" (Plaintiff's Interrogatories, Nos. 9, 10, 11, 12).  In response, Defendant argues that the plan administrator is always presumed to have a conflict of interest such that discovery relating to such issues is unnecessary (Defendant's Brief in Support of Motion for Protective Order, pg. 8).

In *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 618 (6th Cir. 1998), the Sixth Circuit indicated that a district court may consider evidence outside of the administrative record where that evidence tends to show bias on the part of the plan administrator.  In *Wilkins*, the plaintiff sought to introduce in the district court an affidavit of a physician who offered an impression of an MRI taken after the administrator made the decision to deny benefits. The district court refused to consider the affidavit and the Sixth Circuit affirmed the district court's refusal.  Thus, the Sixth Circuit did not directly address to what extent, if any, a Plaintiff should be allowed discovery where he alleges that a plan administrator acted with bias or self-interest.

In *Schey v. Unum Life Ins. Co.*, 145 F. Supp. 2d 919 (N.D. Ohio 2001), the court considered whether to allow discovery to a claimant who alleged bias and conflict of interest on the part of a plan administrator.  Citing to *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514 (6th Cir. 1998), the court concluded that there is "an irrebuttable presumption . . . [of] a conflict of interest . . . or bias . . . whenever the same entity wears both the administrator's hat and the payor's hat [and] no need exists for discovery of evidence to establish [such a conflict of interest]." *Schey*, 145 F. Supp. 2d at 923.  The court also noted that "it seems difficult to imagine that every ERISA claim involving a self-funded plan should involve a free ranging inquiry into the mental processes of those making the challenged benefit decision." *Id.* at 924.  This Court finds *Schey* persuasive and agrees that "nothing in the law of this

-10-

Circuit . . . permits discovery of evidence outside the administrative record beyond the guidelines set out in the *Wilkins* case." *Id.*

For the foregoing reasons, the Court concludes that Defendant has carried its burden of proving that Plaintiff is not entitled to his discovery requests in this ERISA action challenging Defendant's decision to terminate Plaintiff's disability benefits.

Accordingly, Defendant's Motion for Protective Order is **GRANTED**.  Defendant need not respond to any of Plaintiff's discovery requests contained in Plaintiff's First Interrogatories, Plaintiff's First Request For Production of Documents, or Plaintiff's Requests for Admissions.  Plaintiff is also barred from serving upon Defendant any new discovery requests without prior leave of this Court and consistent with this Order.

**IT IS SO ORDERED.**

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: May 6, 2005                     s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Order was served upon Patrick Derkacz and Stephen L. Witenoff on this date.

Dated: May 6, 2005                     s/ Lisa C. Bartlett
                                        Courtroom Deputy

-11-